[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 1. The parties were intermarried on May 22, 1986 at Moscow, Russia.
 2. Both parties have resided, continuously, in the state of Connecticut for at least one year next preceding the institution of this action.
3. This matter came to the court on November 2, 1999.
 4. The matter then came to later dates when the defendant appeared, by counsel, and a complete trial was conducted.
 5. The parties were requested to file post trial submissions on evidentiary burdens. The parties complied with the request.
 6. There are three minor children issue of the marriage, Leah, Ruth and Hannah.
 7. The plaintiff has alleged irretrievable breakdown as the grounds of dissolution. She has alleged and proven fault for purposes of other statutorily required determinations/allocations and/or CT Page 3132-ea distributions.
 8. The only credible evidence presented demonstrated that the defendant, wilfully sought, pursued and developed an affair with his current female partner, during the period of marriage.
 9. Defendant has failed to prove his allegation of marital infidelity.
 10. Neither the State of Connecticut nor any of its municipal subdivisions claim any financial interest in this matter.
 11. On 11/24/99 the court, McLachlan, J., ordered the defendant to pay alimony to the plaintiff in the amount of $400.00 per week, pendente lite.
 12. On 11/24/99 the court, McLachlan, Jr., awarded the parties joint custody, primary physical residence with the plaintiff, with stated visitation for the defendant, pendente lite.
 13. On 11/24/99 the court, McLachlan, J., ordered the defendant to pay the sum of $276.00 per week as child support, pendente lite.
 14. On 11/24/99 the court, McLachlan, Jr., had defendant's financial affidavit dated 11/20/00 (file stamped the same date) for purposes of the decision making process.
 15. The cited financial affidavit was false and misleading in that it did not report defendant's Aetna IRA and a Prudential account in which the defendant had some interest.
 16. Based on this court's assessment of defendant's demeanor and credibility during his testimony, the omissions on the financial affidavit of 11/20/00 were wilful and intended to mislead the court and the plaintiff.
 17. During the marriage of the parties they acquired CT Page 3132-eb various pieces of real property using personal and family funds. The last of these was the Old Fairwood Road, Bethany property.
 18. During the marriage of the parties, the defendant's family, primarily his brother, made several "deliveries" of cash to the parties (February "91, September "93, December' 95 and December' 97).
 19. The testimony from the defendant and his brother concerning the nature and purpose of these cash "deliveries" had one common element, it was not credible.
 20. The credible evidence is that the cash was delivered to the defendant's ownership for use of his family unit.
 21. On March 21, 1997 the defendant opened a Fidelity Investment Account, Plaintiff's Exhibit 14, with a deposit of $60,000.00. He was clearly the owner of the account. Plaintiff's Exhibit 13.
 22. Defendant's assertion that the funds used to open the Fidelity account belonged to his brother was not worthy of belief.
 23. Over a period of time the Fidelity account grew and was added to by the defendant.
 24. Defendant asserted that, in addition to investment growth, the Fidelity account increased as a result of new investments from the brother. The allegation is that these new funds were wire transferred to an account the plaintiff and the defendant jointly held at Fleet. Defendant's Exhibit C.
 25. The defendant offered evidence to prove that a major source of the Fidelity funds was the joint Fleet Account. Defendant's Exhibit D.
 26. Defendant's Exhibit C demonstrates wire transfers CT Page 3132-ec into the joint Fleet account from, at least, the following:
1. Paritate Bank;
2. Yardstone Corporation;
3. Income Bancorp;
4. Manro Finance, LLC;
5. Grason Ex. Imp LLC;
6. Protex Group Corp;
7. Rictols L. Moscow;
8. Alyan Trade Moscow;
9. Logica Systems, LLC;
10. Unitex International;
11. Golden Development;
12. Pabster Inc.;
13. Debor San Corp., Wilm;
14. Technopulsar BBK; and
15. Peter Wenger Handel
Defendant did not offer a single document or credible evidence that would demonstrate that these transfers were initiated by or related to defendant's brother or any other family member. No believable evidence was offered to support defendant's assertions concerning the source of these funds.
 27. The testimony by the defendant's brother that these transfers were all his money cannot and should not be given any credibility. While I need not and do not find that the money was in fact fees earned by the defendant by his entity, CT Page 3132-ed Sasha, as a consultant, that is a much more plausible explanation than the claim offered by the defendant or his brother.
 28. I need to and do find that the only credible evidence demonstrates that the funds wired into the parties joint account and the assets in the Fidelity account were and are the property of the marital estate. All credible evidence demonstrates that all right, title, and interest in these funds were vested in the parties to this action.
 29. On the date of the trial, the Fidelity account stood in the joint names of the defendant and his brother.
 30. This status resulted from a change, initiated by the defendant, on November 3, 1999.
 31. This event was the day after the return date of this action.
 32. This event was after in hand service, and effectiveness of the automatic orders, on October 21, 1999.
 33. This event was the day after the defendant filed his pro se appearance in this case.
 34. The sequence of events, considered with the demeanor of the defendant and his brother during the trial, demonstrates that the transfer, from defendant's sole name to joint names with his brother, was a sham. The transfer was meant to mislead the plaintiff and the court concerning the true value of the marital estate.
 35. The parties have agreed to joint legal custody, primary physical residence with the plaintiff.
 36. There is no apparent need for the court to state specific visitation since the parties seem able to handle these mattes with the best interest of the children as the controlling interest. CT Page 3132-ee
 37. The child, Leah, is suffering from significant psychiatric/psychological difficulties which require, and will continue to require, treatment and extensive maternal attention.
 38. The plaintiff maintains her employment at Connecticut Telephone, in part, because the relationship is supportive of her needs to tend to and assist Leah's care.
 39. Defendant asserts, without persuasion, that the plaintiff is underemployed. In light of Leah's needs, this is not the fact.
 40. The evidence at trial was that the defendant's legitimate earning capacity, in the United States, is $120,000.00 per year.[1] No evidence was offered to define and particularize the existence of and amount of a consistent earning capacity outside the United States.
 ORDERS
Having considered all the evidence, the testimony and the mandates of 46b-81 C.G.S. 46b-82 C.G.S. 46b-83
C.G.S. and 46b-84 C.G.S. the court orders the following:
 1. The marriage is dissolved on grounds of irretrievable breakdown;
 2. The parties will co-parent pursuant to this order of joint legal custody;
 3. Primary physical residence of the minor children will be with the plaintiff, mother;
 4. There shall be an exception to the normal extent of decision making in a joint legal custody situation which is that the plaintiff/mother shall make, after consultation with the defendant/father, final decisions concerning the health, needs/care, dental needs/care (including orthodontics) and/or CT Page 3132-ef psychiatric/psychologic needs of the minor children;
 5. The defendant! father shall have reasonable and flexible visitation;
 6. The plaintiff/mother will foster and encourage the paternal relationship between the father and children, including extensive overnight and vacation visitation.
 7. The defendant/father will, at all times, maintain and pay for the maximum medical/dental/psychological/psychiatric insurance coverage for the minor children as available through his employer at a reasonable cost (as of the date of this decision $500.00 per month for the benefit of the minor children is deemed reasonable).
 8. The plaintiff/mother will, in the event the defendant/father could not or has not provided the coverage recited in paragraph 7, at all times, maintain and pay for the maximum medical/dental/psychological/psychiatric insurance coverage for the minor children as available through her employer at a reasonable cost (as of the date of this decision $500.00 per month for the benefit of the minor children is deemed reasonable).
 9. The plaintiff shall have all the benefits and obligations of 46b-84 (e).
 10. Should the plaintiff/mother have to maintain insurance pursuant to paragraph 8, the defendant/father shall, within thirty (30) days of each payment, reimburse the plaintiff/mother for the amount she has paid for the coverage.
 11. The defendant shall, on or before March 30, 2001, pay over to the plaintiff a sum equal to one half of the value of Fidelity account #x57-134988 as of November 3, 1999 (the date of the transfer). CT Page 3132-eg
 12. As of the date this decision is issued, plaintiff shall have a prejudgment remedy attachment (judgement not being final until the completion of appeal processes or periods) on any and all assets of the defendant, choate or inchoate, in the amount of three hundred thousand ($300,000.00) dollars.
 13. The combined income of the parties places their income outside of the Child Support Guidelines and the Court finds that there is (especially in light of the psychiatric needs of the children) a reason to determine that, as of this time and as circumstances now exist, child support payments shall be made from the defendant to the plaintiff in the amount of $550.00 per week. This is an appropriate deviation from the Guidelines.
 14. The plaintiff is awarded all right, title and interest in any real property interest held by the parties or either of them, as of 11/2/99.
 15. The plaintiff is awarded a monetary sum equal to the value of defendant's interest, as of 11/2/99, in any real property to which the defendant cannot deliver title within thirty days of this decision.
 16. The plaintiff/wife shall retain all right, title and interest, not otherwise committed by this decision, to all assets and appearing on her financial affidavit.
 17. The defendant/husband shall pay, within forty-five (45) days of this decision, one-half of all unimbursed medical/dental bills incurred for any of the children since 11/2/99. Plaintiff will provide a full and detailed accounting, including bill copies, to the defendant within ten (15) days of receiving any claimed unreimbursed expenses. Within ten (10) days of receipt of the accounting the defendant will reimburse the plaintiff for one-half of the unreimbursed expense. CT Page 3132-eh
 18. The defendant shall pay, to the plaintiff, the sum of $150.00 per week as alimony.
 19. The defendant's interest, in the event he failed to abide by the provisions of paragraph 11 above, in his Aetna retirement account and his Prudential IRA account, is transferred pursuant to a QDRO to the plaintiff. This transfer shall not relieve the defendant of his obligation to fully satisfy the amount due under paragraph 11, supra. Until such time as the defendant complies with the mandate of paragraph 11, the plaintiff shall have an attachment on the Aetna retirement account and the Prudential IRA account. The defendant is enjoined from conducting any transactions in these accounts until he has fulfilled his obligations under paragraph 11.
 20. The defendant shall, in the event he timely complied with the provisions of paragraph 11 above, transfer, to the plaintiff, via QDRO, one quarter of his interest in his Aetna retirement account and his Prudential IRA, as valued on 11/2/99.
 21. The plaintiff/wife shall have the youngest child, Hannah as an IRS deduction. The defendant/husband shall be entitled to the deduction for the other two children as long as eligible.
 22. The defendant/father is, pursuant to 46b-84 (f) C.G.S., ordered to post a surety bond to guarantee his child support payments pursuant to this decision in the amount of one hundred fifty thousand ($150,000.00) dollars and leave such bond posted until all his child support and health insurance financial obligations under this decision are satisfied.
 23. Until such time as the defendant has posted the bond demanded in paragraph 2g or achieved some other court order assuring compliance, the defendant shall not transfer, alienate or move any CT Page 3132-ei asset in which he has an interest. He shall not do or allow any deed to be done which will result in an alienation of his interest in any asset until all conditions of this judgment have been satisfied.
 24. An immediate wage withholding shall issue for the collection of child support and alimony in conformity with 46b-69a C.G.S.
 CONCLUSION
There is ample evidence to believe the defendant is interested in and/or has tried to conceal his assets from the jurisdiction of the court. There is no evidence that the court can enforce its financial orders, absent prompt action by the plaintiff.
The only credible evidence leads the court to query the legality of the defendant's financial transactions within existing foreign currency transfer statutes, financial transaction reporting statutes and laundering statutes. In addition, the court notes that defendant offeredno evidence, as part of his claim to title in the assets, that he had promptly and appropriately filed tax reports. Therefore, the court reporter and the clerk are ordered to, promptly, prepare and deliver a complete copy of the file and hearings to the Office of the Chief State's Attorney and the United States Attorney, District of Connecticut.
BRENNAN, J.